# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.F., a minor by and through her guardian ad litem, AMBER MOORE, and AMBER MOORE, individually,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>McKESSON CORPORATION and SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, and DOES 1 through 100, inclusive,<br><br>　　　　　Defendants. | Case No.: 1:13-cv-01699 - LJO - JLT<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND THE ACTION TO KERN COUNTY SUPERIOR COURT<br><br>(Doc. 6)<br><br>ORDER DIRECTING THE CLERK OF COURT TO CLOSE THE ACTION |

J.F., by and through her guardian ad litem Amber Moore, and Amber Moore, as an individual (collectively, "Plaintiffs"), seek remand of this action Kern County Superior Court. (Doc. 6.) Plaintiffs argue this Court lacks diversity jurisdiction because Defendant McKesson is a citizen of California. SmithKline Beecham Corporation, doing business as GlaxoSmithKline, LLC ("GSK" or "Defendant") opposes the motion to remand, arguing this Court has jurisdiction because Defendant McKesson was fraudulently joined. (Doc. 17.)

The Court heard the oral arguments of the parties at the hearing held on January 14, 2014. For the reasons set forth below, Plaintiffs' motion to remand is **GRANTED**.

///

///

1

## I.     Factual and Procedural History

Plaintiffs initiated this action by filing a complaint on July 31, 2013, in Kern County Superior Court, Case No. S-1500-CV-279990-DRL.  (Doc. 1 at 2; Doc. 1-1 at 3.)  J.F. alleges her mother was prescribed "paroxetine" which "is manufactured, promoted, distributed, labeled and marketed by GSK under the trade name[s] Paxil®, Paxil Oral Suspension ®, and Paxil CR®."  (Doc. 1-1 at 6, ¶¶ 20-21.)  Paroxetine "is a member of the class of drugs known as 'selective serotonin reuptake inhibitors' or 'SSRIs," and is used to treated depression in adults.  (*Id.*, ¶ 20.)  Plaintiffs allege Ms. Moore took Paxil while pregnant, and that upon Plaintiffs' "information and belief, McKesson supplied the Paxil® pills ingested by Amber Moore that caused injury to [J.F.]"  (*Id.* at 5-6, ¶¶ 12, 21.)

According to Plaintiffs, as a result of her mother's use of Paxil, J.F. "has been diagnosed with Chiari I Malformation, which is a congenital neural tube defect from which she continues to suffer headaches, impaired coordination, and takes daily medication."  (Doc. 1-1 at 4, ¶ 2.)  Further, J.F. was "diagnosed with labial adhesion, has a hormone implant in her arm, and endured corrective surgery. (*Id.*)  Plaintiffs allege that at the time medication was prescribed to Ms. Moore, "GSK knew through pre-market studies and post-marketing studies and reports that Paxil® was associated with a significant increased risk of cardiac birth defects in babies whose mothers ingested Paxil® during pregnancy."  (*Id.* at 6, ¶ 22.)  Plaintiffs allege GSK and McKesson are liable for:

(a)    Carelessly and negligently designing, researching, developing, testing, inspecting, producing, manufacturing, analyzing, merchandising, advertising, promoting, labeling, distributing, marketing and selling PAXIL®;

(b)    Failing to fully disclose the results of the testing and other information in its possessing regarding the possibility that PAXIL® can interfere with the proper development of an unborn fetus;

(c)    Being careless and negligent in that Defendants knew or should have known that PAXIL was a substance that would be actively transported through the placenta during pregnancy and could inhibit the health and development of the fetus;

(d)    Negligently and carelessly failing to adequately warn the medical community, the general public, and Plaintiffs of the dangers of using PAXIL during pregnancy;

(e)    Negligently and carelessly representing that PAXIL® was safe for use during pregnancy, when, in fact, Defendants knew or should have known that it was unsafe for this use;

(f)    Negligently and carelessly promoting, advertising, marking, distributing, and selling PAXIL® as safe and effective for use by pregnant women when, in fact, it was unsafe;

(g)    Negligently and carelessly failing to act as a reasonable prudent drug manufacturer;

   (h) Negligently and carelessly over-promoting PAXIL® in a zealous and unreasonable way, without regard to the potential danger that it poses for an unborn fetus; and

   (i) [Promoting PAXIL] for use with pregnant women, despite the fact that GSK knew or should have known that PAXIL® is associated with an increased risk of congenital cardiovascular abnormalities.

(Doc. 1-1 at 10-11.) In addition, Plaintiffs allege that in spite of the dangers shown by the studies, "GSK aggressively and actively promoted Paxil® for use with pregnant women" and "even suggested that was safer and more efficacious than other SSRIs on the market, such as Prozac and Zoloft." (*Id*. at 6, ¶ 23.) However, Paxil was "never approved by the FDA for use with pregnant women." (*Id.*, ¶ 20.)

   For the foregoing acts, Plaintiffs raise the following causes of action: (1) negligence and negligence per se, (2) negligent pharmo-vigilance, (3) strict liability, (4) failure to warn, (5) breach of express warranties, (6) breach of implied warranties, (7) fraud, (8) negligent infliction of emotional distress, (9) negligent design, (10) deceit by concealment in violation of Cal. Civ. Code §§1709 and 1710, (11) negligent misrepresentation, (12) violations of Cal. Bus. & Prof. Code § 17200, (13) violations of Cal. Bus. & Prof. Code § 17500, (14)  and a violation of the Consumer Legal Remedies Act as set forth in Cal. Civ. Code § 1750. (*See generally* Doc. 1-1 at 3, 10-29.)

   Plaintiffs filed a proof of service on August 23, 2013, indicating McKesson Corporation was served on August 21, 2013.[1] In addition, Plaintiff filed proofs of service GSK on September 24, 2013. McKesson filed its answer to the complaint on September 26, 2013. GSK filed its answer in the state court on October 21, 2013.

   On October 23, 2013, GSK filed a Notice of Removal, thereby initiating the action in this Court. (Doc. 1.) GSK asserted the action was properly removed pursuant to 28 U.S.C. §§ 1332 and 1441 because this is "an action between citizens of different states in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." (Doc. 1 at 2, ¶ 4.) According to

---

[1] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. *Mullis v. United States Bank. Ct.,* 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980). Therefore, judicial notice is taken of the court's docket and records in Kern County Case No. S-1500-CV-279990-DRL.

GSK, "McKesson has not been properly joined in this lawsuit," and as such McKesson's consent to removal was not required. (*Id.* at 3, ¶¶11, 13.)

Plaintiffs filed the motion to remand now pending before the Court on November 21, 2013, asserting removal was not proper because there is not complete diversity among the parties. (Doc. 6.) GSK filed its opposition to the motion on December 23, 2013 (Doc. 17), to which Plaintiffs replied on January 7, 2014 (Doc. 21).

## II. Removal Jurisdiction

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987). Specifically,

> Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at § 1331.

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading. *Id.* at § 1446(b). Removal statutes are to be strictly construed, *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006); *see also Calif. ex. rel. Lockyer v. Dynegy*, 375 F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute"). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

## III. Diversity Jurisdiction and Fraudulent Joinder

The District Court has original jurisdiction over actions in which there is complete diversity of citizenship. *See* 28 U.S.C. § 1332(a). Plaintiffs allege they are California residents; SmithKline Beecham (GSK) is a corporation with its principal place of business in Pennsylvania; and McKesson is a Delaware corporation with its principal place of business in San Francisco, California. (Doc. 1-1 at 4-

4

5). GSK established diversity jurisdiction between its company and Plaintiffs, and asserts the requirement of 28 U.S.C. § 1332(a) is satisfied because McKesson is a sham defendant whose presence does not destroy the diversity jurisdiction. As explained by the Ninth Circuit, an exception to the requirement for complete diversity exists when a non-diverse defendant is "fraudulently joined." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

"Fraudulent joinder is a term of art," and does not require an ill motive by a plaintiff. *McCabe*, 811 F.2d at 1339. The Court need not find the joinder was for the purpose of preventing removal. *Briano v. Conseco Life Ins. Co.*, 126 F.Supp.2d 1293, 1296 (C.D. Cal. 2000). Joinder is deemed fraudulent if the plaintiff cannot state a cause of action against the non-diverse defendant. *Nasrawi v. Buck Consultants, LLC*, 776 F.Supp.2d 1166, 1175 (E.D. Cal. 2011). The Court must determine that "the plaintiff could not possibly recover against the party whose joinder is questioned." *Id.*; *see also Briano*, 126 F.Supp.2d at 1296 (explaining a court must find "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court"). When evaluating whether a plaintiff can prevail on the merits of his claim against a defendant who is alleged to have been fraudulently joined, "all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor." *Nasrawi*, 776 F.Supp.2d at 1170 (citing *Kruso v. Int'l Tel. & Tel. Corp.*, 972 F.2d 1416, 1426 (9th Cir. 1989).

The Court may look beyond the pleadings to determine if a defendant has been fraudulently joined, but "'a plaintiff need only have one potentially valid claim against a non-diverse defendant' to survive a fraudulent joinder challenge." *Nasrawi*, 776 F. Supp. 2d at 1170 (citing *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 993-95 (D. Nev. 2005); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). The party alleging fraudulent joinder has the "heavy burden" of demonstrating by clear and convincing evidence, the non-diverse party has been joined fraudulently. *Hamilton Materials, Inc. v. Down Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007); *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009).

Where the moving party must resort to defenses to the merits of the action to demonstrate the defendant was fraudulently named, it cannot be said that the plaintiff's failure to state a claim against the resident defendant is "obvious according to the settled rules of the state." *Hamilton Materials, Inc.*

5

*v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). In this event, the defendant has failed to "overcome the 'strong presumption against removal jurisdiction.'" *Gaus,* 980 F.2d at 566.

### IV. Discussion and Analysis

In the Notice of Removal, GSK asserted the Court has diversity jurisdiction over the action because McKesson has been fraudulently joined and its citizenship "must be ignored." (Doc. 1 at 7, emphasis omitted.) According to GSK, Plaintiffs' claims against McKesson fail because: "(1) Plaintiffs have failed to allege any factual basis for the claims asserted against McKesson and (2) there is no legal basis for the claims Plaintiffs seek to bring against McKesson as pleaded." (*Id.*) On the other hand, Plaintiffs argue "GSK fails to prove by clear and convincing evidence that McKesson was fraudulently joined," and that "GSK's fraudulent joinder arguments have been rejected time and time again by district Courts in the Ninth Circuit and other Circuits. (Doc. 6-1 at 12, citing, e.g., *Hatherley v. Pfizer, Inc.*, 2013 U.S. Dist. LEXIS 93943, at *5 (E.D. Cal. July 3, 2013); *K.E.R. v. Pfizer, Inc.*, 2013 U.S. Dist. LEXIS 153747, at *3-5 (E.D. Cal. Oct. 23, 2013); *A.S. v. Pfizer, Inc.*, 2013 U.S. Dist. LEXIS 76307, at *30-31 (E.D. Cal. May 30, 2013).

### A. Adequacy of the Complaint

As an initial matter, GSK contends Plaintiffs fail "to make any material allegations" against McKesson. (Doc. 1 at 7.) GSK notes that Plaintiff states upon "information and belief" that McKesson distributed the Paxil ingested by Ms. Moore, and argues Plaintiffs fail to allege facts to support this allegation. (*Id.*; Doc. 17 at 7.) Consequently, GSK argues Plaintiffs fail to state adequate facts to support a claim against McKesson under California pleading standards. (Doc. 17 at 7, citing *Bockrath v. Aldrich Chem. Co., Inc.*, 21 Cal.4th 71, 81 (1999)).

Previously, this Court determined McKesson was fraudulently joined in an action when the plaintiff based her claims only on the fact that "McKesson is a major distributor of the drug.'" *Aronis v. Merck & Co.*, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005)). Here, however, Plaintiffs have not only asserted that McKesson is a major distributor of Paxil, but have alleged also that "McKesson packaged, marketed, distributed, promoted and sold Paxil® in California and Kern County" and that "[u]pon in formation and belief, *McKesson supplied the Paxil® pills ingested by Amber Moore*." (Doc. 1-1 at 5, ¶¶ 10 and 12, emphasis added). Such allegations were absent from the complaint in *Aronis.*

6

Furthermore, this Court has explained: "The fact that Plaintiff's allegations based on information and belief does not make it 'obvious according to the settled rules of the state' that the complaint fails to state a claim." *Oliver v. McNeil-PPC, Inc.*, 2013 WL 459630, at * 6 (citing *McCabe*, 811 F.2d at 1339; *Mendez v. AstraZeneca Pharmaceuticals LP*, 2012 WL 1911382, at *3 (E.D. Cal. May 25, 2012)).

Under California law, a complaint must contain "[a] statement of the facts constituting the cause of action, in ordinary and concise language." Cal. Code Civ. Pro. § 425.10(a)(1). This requires "only general allegations of ultimate fact." *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1469-1470 (2006). The Court of Appeal explained: "The plaintiff need not plead evidentiary facts supporting the allegation of ultimate fact. A pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim." *Id.* (internal citations omitted). Moreover, a "'plaintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true.'" *Doe v. City of Los Angeles*, 42 Cal. 4th 531, 550 (2007). "When a plaintiff lacks knowledge and the means of obtaining knowledge of facts material to his or her cause of action because the matters are peculiarly within the knowledge of the adverse party, and the pleader can learn of them only from statements of others, the pleader may plead what he or she believes to be true as a result of information (hearsay) the pleader has received."[2] *Dey v. Cont'l Cent. Credit*, 170 Cal.App.4th 721, 725 n.1 (2008) (internal quotation marks omitted).

Plaintiffs allege GSK and McKesson were involved with "designing, researching, developing, testing, inspecting, producing, manufacturing, analyzing, merchandising, advertising, promoting, labeling, distributing, marketing, and selling PAXIL.®" (Doc. 1-1 at 10, ¶40.) In addition, Plaintiffs

---

[2] As in *Bartal v. AstraZeneca Pharm. LP*, 2012 WL 3201241 at *3 (N.D. Cal. Aug. 3, 2012), the Court does not find *Bockrath v. Aldrich Chem. Co., Inc.,* 21 Cal.4th 71, 81-86 (1999) requires a different result. In *Bockrath*, the plaintiff listed numerous toxins to which he may or may not have been exposed and which may have caused him to develop cancer. *Id*. at 80. There was no factual allegation that the plaintiff was exposed to any particular toxin which he alleged actually caused the injury. *Id*. In remanding the matter for another opportunity to plead his case, to demonstration which of the toxins caused his injury and to identify who manufactured or supplied the toxin. *Id*. In doing so, the Court urged the plaintiff to avail himself of Doe pleading as appropriate but held, "If plaintiffs do not have a sufficient basis to allege that a particular internalized injury-causing toxin was manufactured or supplied by a specific person or entity, their complaints must name Doe defendants . . . *Id*. at 80-81. However, "Plaintiffs who know more should, of course, allege additional facts that are important in apprising the defendant of the basis for the claim . . ." *Id*. at 80. Indeed, the Court rejected one defendant's argument that the plaintiff should have named Doe defendants rather than naming the defendants. The Court rejected this argument and observed that naming a Doe defendant is proper *only when* the "plaintiff is ignorant of the identities of those who allegedly caused him to contract multiple myeloma. [Citation] As we have explained, he told the trial court otherwise [Citation] and his complaint avers otherwise." Here, Plaintiffs allege McKesson distributed the drug which caused the harm and have alleged why they think so. This is sufficient even under *Bockrath*.

7

contend the defendants, including McKesson, "knew or should have known that PAXIL® could be dangerous and unsafe for pregnant women and the developing fetus," yet the defendants "failed to adequately warn of said risks." (*Id.* at 11, ¶ 43; 14, ¶ 48.) According to Plaintiffs, "as a direct and proximate result" of the defendants' actions, the plaintiffs "incurred past and future general and special damages." (*See id.* at 12, ¶ 46). Whether McKesson distributed the pills which caused the alleged injuries is not information within the Plaintiffs' knowledge. Instead, they must obtain this information from McKesson, the pharmacy or other third party. Thus, the allegation that McKesson distributed the drug at issue, based upon information and belief, is sufficient. *Doe*, 42 Cal.4th at 550. As a result, the Court finds Plaintiffs have sufficiently alleged a causal link between McKesson and the injuries suffered.

### B. Learned Intermediary Doctrine

According to GSK, "there is no legal basis for the causes of action that Plaintiffs assert against McKesson because the claims are based on an alleged failure to warn that is premised, for McKesson, on a non-existent duty to warn." (Doc. 1 at 11.) GSK argues that "McKesson bears no duty to warn based upon the learned intermediary doctrine, which provides that the duty to warn about a drug's risks runs from the manufacturer to the physician (the 'learned intermediary') and then from the physician to the patient." (*Id.*, citing *Brown v. Superior Court*, 44 Cal. 3d 1049, 1061-62 & 1061 n.9 (1988); *Carlin v. Superior Court*, 13 Cal.4th 1104, 1116 (1996)).

Specifically, under the learned intermediary doctrine, the duty to warn of risks involved with the use of prescription drugs "runs to the physician, not the patient." *Carlin*, 13 Cal.4th at 1116 (emphasis omitted). The California Court of Appeal explained that the rationale behind the learned intermediary doctrine as follows:

> (1) The doctor is intended to be an intervening party in the full sense of the word. Medical ethics as well as medical practice dictate independent judgment, unaffected by the manufacturer's control, on the part of the doctor. (2) Were the patient to be given the complete and highly technical information on the adverse possibility associated with the use of the drug, he would have no way to evaluate it, and in his limited understanding he might actually object to the use of the drug, thereby jeopardizing his life. (3) It would be virtually impossible for a manufacturer to comply with the duty of direct warning, as there is no sure way to reach the patient.

*Carmichael v. Reitz*, 17 Cal. App. 3d 958, 989 (1971) (citation omitted). The doctrine, "where it

applies at all, applies *only* if a *manufacturer* provided adequate warnings to the intermediary." *Stewart v. Union Carbide Corp.*, 190 Cal.App.4th 23, 29 (2010); *see also Love v. Wolf*, 226 Cal.App.2d 378, 395 (1964) (explaining that with medication, "if adequate warning of potential dangers of a drug has been given to doctors, there is no duty by the drug manufacturer to insure that the warning reaches the doctor's patient for whom the drug is prescribed").

Importantly, "[t]he learned intermediary doctrine is a defense to a cognizable cause of action which courts do not ordinarily consider in determining fraudulent joinder." *Martin v. Merck & Co.*, 2005 WL 1984483, at *4 (E.D. Cal. Aug. 15, 2005) (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998)). In any event, the argument that the learned intermediary doctrine should apply by analogy to McKesson as a distributor—rather than a manufacturer—is a tacit admission that this defense does not "obviously" preclude a cause of action against McKesson. On the other hand, the defense applies only where the warning given was adequate based upon "what was scientifically knowable." *Id.* Where the warning fails to provide the doctor with known or knowable information which militates against use of the drug by certain patients, the learned intermediary doctrine does not preclude imposition of liability. *Id.* In California, this includes liability imposed on the distributor. *Id.*

Here, as stated above, Plaintiffs allege Defendants knew of the risks to pregnant women that Paxil posed and failed to warn of these risks. Further, Plaintiffs allege Defendants represented Paxil as being a safe alternative for pregnant women—and more safe than Prozac or Zoloft—despite that the FDA had never approved the drug for use by pregnant women. (Doc. 1-1 at 11, ¶¶ 20, 23.) Thus, based upon these factual allegations, the learned intermediary doctrine would not preclude a cause of action against McKesson.

**C.     Products liability under California law**

GSK argues McKesson is fraudulently joined because the company "cannot be held liable under a products liability theory." (Doc. 17 at 18.) GSK observes that in *Skinner v. Warner-Lambert Co.*, the Central District opined "pursuant to comment k of the Restatement (Second) of Torts Section 402A and California law following comment k, a distributor of a prescription drug is not subject to

9

strict liability.' (*Id.*, quoting *Skinner,* 2003 WL 25598915 (C.D. Cal. Apr. 28, 2003)).[3] Thus, GSK appears to argue comment k precludes a products liability claim against McKesson.

On the other hand, Plaintiffs observe that following *Skinner,* the Central District "expressly rejected" its holding and determined: "[C]omment k… does not exempt distributors from strict liability. Rather, comment k states a seller of pharmaceuticals is not strictly liable if the products are properly prepared and marketed, and proper warning is given." (Doc. 6-1 at 24, quoting *Black v. Merck & Co, Inc.*, 2004 U.S. Dist. LEXIS 29860 at *12-13 (C.D. Cal. Mar. 3, 2004)). Therefore, Plaintiffs conclude "comment k does not foreclose any liability against McKesson" because "Plaintiffs allege that Paxil was not properly marketed and that proper warnings were not given." (*Id.*)

Generally, under California law, "a defendant involved in the marketing/distribution process has been held strictly liable if three factors are present: (1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process." *Bay Summit Cmty. Ass'n v. Shell Oil Co.*, 51 Cal. App. 4th 762, 773 (1996) (citing *Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 724 (1972)). Accordingly, California law provides a distributor may be held strictly liable. *See, e.g., Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 262-63 (1964); *Daly v. General Motors Corp.*, 20 Cal.3d 725, 739 (1978); *Anderson v. Owens-Corning Fiberglass Corp.*, 53 Cal. 3d 987, 994 (1991); *Bostick v. Flex Equipment Co.,* 147 Cal. App. 4th 80, 88 (2007).

---

[3] Comment k of the Restatement (Second) of Torts Section 402A provides: "There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk."

Importantly, in *Brown* the California Supreme Court did not address the liability of a distributor of prescription drugs, but only the liability of a manufacturer. The court observed:

> The test stated in comment k *is to be distinguished from strict liability for failure to warn*. Although both concepts identify failure to warn as the basis of liability, comment k imposes liability only if the manufacturer knew or should have known of the defect at the time the product was sold or distributed. Under strict liability, the reason why the warning was not issued is irrelevant, and the manufacturer is liable even if it neither knew nor could have known of the defect about which the warning was required. Thus, *comment k, by focussing (sic) on the blameworthiness of the manufacturer, sets forth a test which sounds in negligence, while imposition of liability for failure to warn without regard to the reason for such failure is consistent with strict liability* since it asks only whether the product that caused injury contained a defect.

*Brown*, 44 Cal. 3d at 1059, n. 4 (emphasis added). The court determined "a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." *Id.* at 1069. Thus, *Brown* does not necessarily preclude Plaintiffs' claim for strict liability against McKesson as a distributor of Paxil. Indeed, because Plaintiffs claim that the label failed to warn of known or knowable risks to pregnant women, *Brown* does not preclude liability even for the manufacturer.

After considering *Brown*, this Court observed previously, "In the prescription drug context, the California Supreme Court has held that manufacturers of prescription drugs can be held strictly liable for a failure to warn of knowable risks. [Citation] The general rule under California law is that all of the participants in the chain of distribution can be strictly liable for injuries caused by a defective product." *Mendez*, 2012 WL 1911382, at *2 (citing *Bostick v. Flex Equip. Co., Inc.*, 147 Cal.App.4th 80, 88 (2007). California courts have not addressed whether a distributor in prescription drug cases may be held strictly liable. *Id.* Therefore, in *Mendez* the Court declined to find the plaintiff's claim for strict liability against McKesson was not viable under California law. Likewise, in *Hinds v. Zimmer*, the Court concluded *Brown* has not foreclosed strict liability for distribution of a product. *Id.*, 2009 WL 1517893, at *4 (E.D. Cal. June 1, 2009).

Significantly, this Court's rulings are consistent with other courts within the Ninth Circuit that have examined the issue. *See, e.g., Smith v. Amylin Pharmaceuticals, LLC*, 2013 WL 3467442, at *6 (S.D. Cal. July 10, 2013) ("because Plaintiff alleges that Defendants did not provide the appropriate

11

warnings, comment k does not absolutely preclude a finding of strict liability against McKesson); *Norris v. AstraZeneca Pharmaceuticals LP*, 2012 WL 1944760, at *2-3 (S.D. Cal. May 30, 2012) (concluding "the complaint adequately establishes that a distributor of pharmaceuticals may be liable under California law"); *Moorhouse v. Bayer Healthcare Pharmaceuticals, Inc.*, 2008 WL 2477389, at *6 (N.D. Cal. Jun. 18, 2008) ("it is not obvious according to the settled rules of California that distributors of prescription drugs cannot be held liable for a failure to warn"); *Black,* 2004 WL 5392660 at *4 (finding comment k "does not exempt distributors from strict liability"); *Rivera v. AstraZeneca Pharms. LP*, 2012 WL 2031348 (C.D. Cal. June 5, 2012) (collecting cases and finding it was not obvious the plaintiff's claims against McKesson would fail). Thus, the Court cannot find it is obvious Plaintiffs' strict productions liability claim against McKesson fails as a matter of law.

**D.     Preemption**

According to GSK, "Plaintiffs also have no valid claims against McKesson because, under *Mutual Pharm. Co. v. Bartlett*, 1333 S.Ct. 2466 (2013) and *PLIVA v. Mensing*, 131 S.Ct. 2567, 2579 (2011), those claims are preempted by federal law." (Doc. 17 at 19.)  GSK contends that "McKesson could not legally change or add warnings to the FDA-approved labeling, just like the generic drug manufacturer defendants in *Bartlett* and *Mensing*."  (*Id.*)

Notably, neither *Bartlett* nor *Mensing* involved a distributor but, instead, as GSK recognizes, involved manufacturers of a generic medication.  In *Mensing,* the manufacturer gained FDA approval to manufacture the drug based upon the Hatch-Waxman Amendments.  *Id.*, 131 at 2574-2575.  These defendants, therefore, were precluded from any effort to modify the warning labels because they were required to exactly reflect that provided on the name brand medication.  *Id.* at 2575.   Recently, the Court referred to this ruling in *Bartlett*, stating that *PLIVA v. Mensing* "made clear, federal law prevents generic drug manufactures from changing their labels."  *Bartlett*, 133 S.Ct. at 2476.  The Court explained that because the drug at issue could not be redesigned without being considered a new drug, the only way for the generic manufacturer to escape liability was to redesign the drug's label, which is impermissible under federal law.  *Id.* at 2476-78.

Here, however, at issue is a *brand* name medication whose manufacturer was permitted to make modifications to the warning label through the CBE ("changes being effected") process, which permits

labels to be changed to add or strengthen warnings. *See Mensing*, 131 S.Ct at 2675. Previously, this Court declined to find a plaintiff's failure-to-warn claims in a similar action in which the brand name manufacturer asserted the plaintiffs' claims against McKesson were preempted, explaining:

> To find plaintiffs' failure-to-warn claims preempted, the court would have to extend *Mensing* and *Bartlett*; that is, it would have to hold that the reasoning the Supreme Court used in those cases to preempt state-law claims against generic manufacturers compels the conclusion that state-law claims against brand-name drug distributors are also preempted.

*Hatherley v. Pfizer, Inc.*, 2013 U.S. Dist. LEXIS 93943 at *19, 2013 WL 3354458 at *6. (E.D. Cal. July 3, 2013). Therefore, the Court concluded that "unless and until this rationale is extended, it is not obvious that plaintiffs have no claim against McKesson under California law because of a preemption defense." *Id.* (internal quotation marks and citation omitted). Likewise, the Southern District has declined to extend *Mensing* and *Bartlett* to pharmaceutical distributors such as McKesson. *See, e.g., Smith v. Amylin Pharms., LLC*, 2013 U.S. Dist. LEXIS 96612 at *12, 2013 WL 3467442 at *4 (S.D. Cal. July 10, 2013) (recognizing "the logic of [the defendant's] argument," but concluding "unless and until this rationale is extended to distributors, it is not obvious, accordingly to the well settled rules of this state, that Plaintiff has absolutely no claim against McKesson").

Moreover, the Supreme Court has explained that federal preemption is a defense to a claim. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13-14 (1983). Further, the Ninth Circuit has determined it is inappropriate to examine whether a plaintiff's claims are preempted by federal law on a motion to remand. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (2009). The Court explained:

> The preemption defense … goes to the merits of the plaintiff's case. When a defendant asserts that the plaintiff's claim is impliedly preempted by federal law, **it cannot be said that the plaintiff's failure to state a claim against the resident defendant is 'obvious according to the settled rules of the state**.' *Hamilton Materials*, 494 F.3d 1203, 1206 (2007). Rather, the preemption question requires an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law. **In such a case, the defendant has failed to overcome the 'strong presumption against removal jurisdiction.**' *Gaus,* 980 F.2d at 566.

*Id.* (emphasis added). Consequently, it is inappropriate to determine whether Plaintiffs' claims against McKesson are preempted by federal law.

///

## IV.     Conclusion and Order

Plaintiffs have articulated a valid theory of liability under California law, and GSK has failed to meet the burden of establishing with "clear and convincing evidence" that Defendant McKesson was fraudulently joined in this action. *Hamilton Materials*, 494 F.3d at 1206. Because the Court lacks diversity jurisdiction over this matter, it would be improper to permit the parties to conduct discovery as requested by GSK. *See Smallwood v. Ill. Cent. R.R Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004) (observing the request for jurisdictional discovery "itself points an inability of the removing party to carry its burden").

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiffs' motion to remand (Doc. 6) is **GRANTED**;
2. This matter is **REMANDED** to Kern County Superior Court; and
3. The Clerk of Court is **DIRECTED** to close this matter, because this Order terminates the action in its entirety.

IT IS SO ORDERED.

Dated:   **January 16, 2014**                      **/s/ Jennifer L. Thurston**
                                                                         UNITED STATES MAGISTRATE JUDGE